Good morning, Owners. This is Pete Frost. May it please the Court. I represent the appellants in this case. Judge Wardlaw, I'd like to reserve two minutes for rebuttal and I'll track my time. I'd like to address three topics and in this order. First, this case precedent in Northwest Indian and successive Ninth Circuit decisions. Second, the 2004 non-point source rule and the agreement. And third, the possibility of any general permit for certain non-point source activities on Forest Service lands in the Central Valley Basin Plan area and what that may mean in the context of this case. So as to my first point, Northwest Indian is on point and precedent as to the correct legal standard for our substantive claim that the Forest Service must comply with Basin Plan objectives when it authorizes activities that may result in non-point source pollution into streams and creeks in California. In Northwest Indian, this Court considered the District Court's findings that the Forest Service authorized road building and logging that would violate a Basin Plan objective, a numeric objective for turbidity and a narrative objective for suspended sediment. And this Court determined that those findings were not clearly erroneous and upheld them. It then turned to the substantive legal claim what the Forest Service may do vis-a-vis Basin Plan objectives. And it held clearly that the cannot authorize a site-specific project that violates Basin Plan objectives. In fact, this Court has repeated that rule in subsequent cases as well. It repeated it in the Sierra Club case on review of the denial of a preliminary injunction related to logging in the Sierras. And it repeated it in the Marble Mountain case related to a logging project on the North Coast. All of these cases stand for the same proposition. Are the objectives that are in the plan, are they externally applicable just of their own force or do they need to be implemented in requirements that are then applied to specific external parties? Judge Collins, they are applicable of their own force. Section 313 of the Clean Water Act requires federal agencies to comply fully with state and local water quality requirements. The Central Valley Basin Plan states explicitly that Basin Plan objectives must be met. The Basin Plan objective states explicitly that fecal coliform levels in certain streams that are designated for recreational use, such are streams on these lands, shall not exceed certain levels. Well, but they contend that that is an overall objective that then the agency has to implement when it then imposes various requirements that then work together with the prohibitions to constitute the externally applicable set of rules. And that it's the agency that has to meet the objective, that it just isn't of its own force What's your response to that argument? Why are they wrong in contending that? They're wrong in two respects. First of all, that contention runs headlong into this court's decision in Northwest Indian. Well, did we consider this in Northwest Indian? Did we even have that issue before us? Didn't the government sort of assume that they were externally applicable? In fairness, I think it did. It took a different tap in that case. But in all three of those cases, the court simply looked to the plain meaning of the bacteria and other objectives present in those cases and determined that the agency must comply with them. And either affirmed district court's decisions that they had been violated or remanded for the factual determination whether they would. But I want to turn to another portion of the question I think you asked me, sir. I think you and not the Forest Service to comply with these objectives, i.e. that it must take some action in order to have these objectives become have efficacy. And that's incorrect. Again, the cases of this court stand for the opposite proposition. And it's not the onus. The onus is not on the regional board or the state board or the EPA to try to anticipate any and all kinds of activities that may occur next to streams and creeks in California and separately address them. By contrast, what it has done in the basin plan and via this objective is set the numeric standard for anything that may occur. And that triggers then a duty on the part of a discharger, such as the Forest Service, to file a discharge report and to obtain a permit or waiver to permit its activity. Mr. Frost, I have a slightly different question. The most recent version of the basin plan itself references the continuing viability of the MAA. And I'm just wondering if the MAA remains in effect, isn't the Forest Service exempt from complying with certain procedural requirements so long as it's reasonably implementing the MAA? No, Your Honor. Yeah, no, I understand. And I anticipated that question. And the answer is no, Your Honor, for two independent reasons. Okay. The basin's plan reference to the MAA is in the context of discussing best management practices. And as this court held in Northwest Indian, those are a means to achieve water quality objectives. They don't supplant them. That had been the government's argument and it was rejected by this court. So I think it's appropriate for the MAA to be referenced in the basin plan as a technique for implementing certain measures to ensure that objectives are met. In this case, factually, I want to stress that as Judge O'Neill found, this is at ER 132 in his order, the government and the interveners never asserted that they were reasonably or properly implementing best management practices to control grazing on these lands. They never made that argument. So they cannot now invoke the provision in the MAA that says reasonable implementation of these kinds of practices obviates the procedural duties that are otherwise were superseded in 2004. And if I may, may I move to that point? Well, can I ask what's the history of this? Have they in fact been complying with the procedural requirements that would otherwise be applicable if there were no exception under the MAA? What's been the course of performance? It depends on the administrative unit of the Forest Service or BLM. And it depends on the regional board and it has been inconsistent. For example, Judge Collins, currently there is some momentum toward the Central Valley Regional Board and the Mahatma Regional Board adopting a general permit for non-point source activities on Forest Service lands. I want to emphasize the latest draft version of that consideration does not include livestock grazing. It excludes livestock grazing and range management. And I submit that latest draft with a 28-J letter for the panel to consider. That's one of the questions I had too. What's the status of that? The negotiations have been ongoing for some five years? The negotiations have been ongoing for more like 20 years. And the most recent draft implementation plan for non-point source activities in the state of 2020. And it specifically does not include livestock grazing or range management among the activities that would otherwise be regulated by a general permit. Judge Collins, I'd like to, if I may, return to your question about how this is playing out. And I want to point out the inconsistency between the government's position that the MAA exempts from obtaining a permit and the fact that the Central Valley, Lahontan, North Coast boards are considering adopting general permits. If there was no requirement anymore based upon the MAA to obtain a permit, there would be no need to generate a general permit to cover these kinds of districts. But have they ever gotten a permit under the period the MAA has been in effect for a long time, I think? That's correct. It's been in effect since 1981, Your Honor. And the answer is no, the Forest Service has not obtained a permit or waiver for livestock grazing on these lands in the Stanislaus National Forest, nor anywhere else in the Central Valley. The only existing general permit that exists that has been issued is for the North Coast region. And that's a different part of California, you know, up near Shasta. And was that a permit to the Forest Service? Yes, sir. It's a, it is a permit specific to the Forest Service and it does cover non-point source activities. And if I may tee off that question, it segues well into my perhaps last point before I save time for rebuttal. Even if there were a general permit that exists for the Forest Service must apply for it. And the Regional Board must consider the specific aspects of the discharge of waste on those Forest Service lands, what the stream is like, what its constituents are like, the level of recreational use, which is very relevant in this case, because these waters, you know, are the entry to the immigrant wilderness in this era. They were designated for folks to because of high levels of fecal coliform. And so even if there were a general permit, the response of the Regional Board to the Forest Service application could be, you know, we're not going to cover you under a general permit. We think what's been going on in these lands over the last 10 years is too egregious. And we're going to require you to apply for an individual permit. And we're going to establish, rather than the general provisions of a general permit, specific provisions that would address the problems that have existed on these lands for a decade. Judge Collins, does that answer your question sufficiently? Yeah, thank you, Counsel. Yes. Well, then if the panel has no further questions, I'd like to save my remaining time for rebuttal. All right. Thank you, Counsel. Mr. Todd, I've indicated you're taking 10 minutes and then Mr. Keller will take five. That is correct, Your Honor. Right. Brian Toth for the Federal Defendant's Appeals. Respectfully, I think my friend on the other side, his central argument relying on water quality objectives being self-implementing is based on a mistaken interpretation of state law. And I just want to provide some context for this appeal. This is a review of the Forest Service's actions authorizing grazing on the National Forest. It's a number of actions, but they're reviewed under the APA for whether they're arbitrary, capricious, and abuse of discretion or not in accordance with law. And it's this last part of the APA standard of review that's become a focus on appeal. Plaintiffs are alleging that the authorizations violate the Federal Facilities Provision of the Clean Water Act, which in turn says that agencies like the Forest Service authorizing activities that result in runoff of pollution. Now that's non-point sources, not traditionally regulated through permits under the Federal Act. Nonetheless, must be subject to state law. And here that state law is the California Porter-Cologne Water Quality Act. And the specific issue is whether, the central issue is whether these objectives under state law are self-executing such that they are requirements with which the Forest Service must comply. This is not an issue that has been decided by this court before or even discussed in any of the opinions that the parties have cited here or any that we know about. The Peterson case, which I'll take first, which Mr. Frost is calling the Northwest Indian case, is a case that held under interpreting a different state basin plan, that a different provision of that other plan was applicable to the Forest Service. That case rejected the United States argument that the best management practices referenced by this 1981 agreement somehow superseded the provisions of the basin plan. This court held that no, they did not. Reliance on the BMPs alone was not sufficient to comply with California's objectives in that regional plan. And so that principle applies. We agree the basin plan may apply to the Forest Service. However, the case did not go into the question that's at issue here, which is, what is the effect of a water body that does not meet that water quality objective in a basin plan? Does that somehow become a self-imposing requirement on the agency when it authorizes activities that may generate runoff? Our submission is that there's nothing in either the state statute or any of the state regulatory documents that the submitted that are in the record demonstrating that the objectives themselves as to this plan, the objectives specifically at issue here, are self-executing. We believe that's supported by the plain text of the state statute. It's supported by a close reading of the relevant administrative documents, specifically the 2004 non-point source enforcement and implementation policy, as well as a close reading of the actual basin plan at issue. And finally, we believe it's supported by the administrative practice in this case. Could they implement it by requiring a permit in order to then bring things down to a level where the objective would be met? That's right. That's it. That's one of the ways that the one of the state administrative agencies, either the state board or a regional board, can enforce the water quality objective against a specific polluter. So, are you conceding they could require the Forest Service to get a permit to accomplish this objective? To do so, they would have to develop a regulatory instrument that imposes the permit requirement on the Forest Service as to grazing, and they haven't done that here. In the blue brief, they could do that. You're conceding that they do have the authority to do that. They could do that, and the Forest Service has cooperated with the processes that have gone on for a number of years, first at the state level and next at the regional level, to develop some sort of regulatory instrument under state law. It's different types of jargon. It's sometimes called a requirement. It's sometimes called a waiver of discharge requirements. Sometimes it's an actual provision in the basin plan called a prohibition. But essentially, these are all the same effect. They're regulatory tools that would impose the requirements John is referring to. And the MAA wouldn't pose an obstacle to that. So, they have the authority to go ahead and impose that requirement on the Forest Service, notwithstanding the prior MAA. I suspect that what would happen would be the MAA would have to either be amended or formally superseded or formally withdrawn in some way. Do they have unilateral authority to depart from it and override it and require the permit? The regional boards, I believe the MAA was signed by the state board. I apologize for not knowing California had water control law as well as I should. I'm not sure whether if the regional board imposes that requirement, it then has to be ratified somehow by the state board. That could effectively supersede the MAA. If it's with the state board, I mean, they don't need the Forest Service's consent. They can carry this out somewhere in state law to compel the federal government to conform its conduct in a way that the objective will be met. You're agreeing with that. Am I misunderstanding that? No, we're agreeing that the Forest Service would be subject to those requirements if the state board promulgated them. The regulatory history in this case demonstrates that the state board tried to do that. They tried through the development of a draft waiver of requirements. This is in the excerpts of record. We cited it. It was never actually adopted. It's in the excerpts and draft form because the state board never actually passed resolution adopting that and imposing that requirement. That was around 2011 or so. The state then went through a process called this Grazing Regulatory Action Project of trying to develop a statewide approach to encourage the regional boards to regulate grazing uniformly. That didn't bear fruit. In 2015, the state board passed a resolution formally discontinuing statewide efforts to develop this type of permit for non-point sources on National Forest Service lands. It then directed the regional boards to engage in their own efforts to do so. That, I think, is what my friend was referring to as ongoing and there not being a whole lot of information as to the current status of that right now. The last iteration of the permit discharge document does not cover livestock grazing. That's my understanding of what is on the website now. That has changed over the past year. This state process, the Forest Service doesn't have any control over, but it is cooperating. Similarly, we don't know what the end product of that process will be at the state level. That is the most current information that we have. It hasn't even been formally proposed. There are California laws that would provide for review under the California Environmental Quality Act, public participation under state law requirements. The public would have an opportunity to shape that proposal. And if members of the public, members of plaintiff wanted to suggest that grazing absolutely ought to be included, they could certainly submit those types of comments through the state process. They can petition the state board. We've cited in our brief the provisions of state law that allow them to bring a petition to the state board if the regional board is failing to act and then even, in some cases, obtain review through, I think it's a mandamus in the state trial court. If the state board refuses to enforce what the plaintiff sees as obligations here, they have these other remedies. I was intrigued by the question asked by my colleague about the interaction between turning the objectives of the basin plan into law and whether the MAA would stop it. And my understanding is that the MAA can be terminated at any time by either party with a number of days notice. So if the state wanted to or however it would do it, it could also give notice to the Forest Service and cancel the MAA. You may be correct about that. I have not studied the termination provisions of the agreement, but I would submit that that is the proper process rather than inviting the federal courts to inject themselves into what the state has planned out as a way of enforcing and I'd like to allow my co-counsel Mr. Keller to speak. Can I just ask one question about the MAA? The MAA uses the phrase it is contemplated that reasonable implementation of these practices will constitute compliance and then it lists the three sort of key provisions about what's externally applicable to outsiders. Is that contemplated? Is that equivalent to a certification or is that just kind of a prediction that this is what we expect but it's not necessarily certain? I think it's more the latter. We haven't had we don't have for example we don't have a formal waiver under the state law requirements but you know the MAA does say that it's contemplated that those requirements will be waived and I think for enforcement purposes the state... But you've never actually gotten a waiver under the MAA? Correct. The waiver is equivalent to a permit and there's a regulatory process for that. The state knows about these discharges. There's no need for the Forest Service to report them and the state or the regional board may act in the absence of a report. So I don't think that's dispositive and I do want to let Mr. Keller speak. I want to be sure to speak. Thank you Judge Wardlaw. May it please the court. Scott Keller for the defendant interveners. The Clean Water Act requires the Forest Service to comply with state law quote in the same manner and to the same extent as any non-governmental entity unquote and this court's precedents have not yet addressed this statutory language but it's critically important here for two primary reasons the first of which this court has already taken questions on which are water quality objectives are only binding obligations when they're implemented through permits waivers or prohibitions and the second critical point is the remedy plaintiffs seek here an injunction that would modify federal land permits to halt grazing would subvert the state's progressive enforcement system which is an escalating series of actions taken by the regional water board that first involved notification of violations and compliance assistance. So even if there were somehow a way that the objectives were in fact implemented here and they're not there would still be this additional problem that a regional water board doesn't step in and immediately end an activity rather it gives notice it works with the parties it tries to achieve compliance and so in analyzing whether the Forest Service is complying in the same manner and particularly to the same extent that remedial scheme and this is its supplemental excerpt 54 has to be examined additionally that same manner and same extent language is precisely what the 10th circuits center for native ecosystems versus cables decision relied upon again this court's northwest indian versus peterson decision did not analyze the same extent and same manner language and additionally there as my friend has said that that holding was based on a clear error standard that of course applies to factual federal facilities provision. I have a question you both of you make a lot of arguments about causation like this no one's demonstrated that it's the grazing that's causing all this legal matter to be in the waters and impairing the creeks and I'm just wondering why no one raised or if they did raise constitutional standing in this case. So this court's precedents have said that an APA claim can be raised and given the fact that the plaintiffs have disputed this we agree that there would not be standing because at excerpts 298 this is the regional water board speaking quote staff agrees that grazing should not be considered the sole source of bacteria to these streams since there are wildlife species and other potential sources goes on to say there could be natural and unknown sources. Our brief at page 57 note 18 raises this issue about causation and that is a separate basis on which these claims should fail in addition to the fact that of the two problems that the same manner as non-governmental entities. My other related question is this is cast as an APA action but really what they're alleging is violation of the clean water act the facilities provision right and that's I mean and and if there's a violation there's a violation you wouldn't argue you wouldn't ask whether the violation was arbitrary and capricious because the forest land would be violating the law. That's correct Judge Wardlaw but in asking whether there's a violation the text of the clean water acts federal facility provision says there's only a violation when the government is not complying in the same manner and to the same extent and so here when you have statutory text the NPS policy even the basin plan all contemplating that objectives themselves need to be implemented to be binding obligations through permits waivers or prohibitions and you have the remedial issues just mentioned about the regional board doesn't come in and just modify permits and stop activities for those two reasons there would still not be a violation and therefore there wouldn't be an APA not in accordance with law problem. If there are no further questions we'd ask that you affirm the district court. Thank you. Thank you. All right Mr. Frost you have some time remaining. Thank you your honor. I have three points in response to my colleagues arguments. I want to address with respect to circular nature of the Forest Services argument. I want to stress to the court the nature of the 2004 non-point source rule and I'd like to address the final topic you just asked about which relates to causation. If I understand the Forest Services argument correctly it appears to go like this. Basin plan objectives are not self-executing. They become effective only in a permit or waiver but we don't have to file a discharge report or obtain a permit or waiver because the MAA says we These provisions were rendered obsolete by the passage of the 2004 non-point source policy and I'd like to emphasize how that was adopted. It was adopted pursuant to notice and comment rule making. It was analyzed under the California Environmental Quality Act. Its effects were ultimately approved by the federal EPA under section 208 of the Clean Water Act. This isn't merely a guidance document. It's a rule. It's a regulation and it states explicitly that all non-point sources in the state of California must be regulated by permit waiver or other service to file a discharge report with the regional board and enable it to determine whether to allow that discharge or not. As to the Northwest Indian case my colleague for interveners said that we rested on the clear error part of that case. He is correct that was as the findings but that's not all this court did. It reviewed de novo the trial court's determination that a violation of the basin plan numeric and narrative standards were a violation of Porter-Cologne and it upheld that ruling period and third Judge Wardlaw asked to the causation question. The record in this case is very clear that for most of the last decade testing has been performed not only in the streams that flow through the lands in the Bell and Eagle and Herring allotments but also in what is called a control area in Borland Creek which is about at the same elevation and it's on forest service lands. It's in the same drainage but it's not grazed by cattle and the same methodology that had been approved by the regional board for testing the streams on these allotments was a 10-year period subject only to natural events. There were no violations of the bacteria injected in Borland Creek so as to causation it doesn't the Clean Water Act does not require that the forest service be the sole or exclusive source of bacteria in these streams but where it is a contributing source which the data prove it is liable as a discharger under Porter-Cologne. What language in the 2004 policy overrides or eliminates the MAAs because it has language that refers to their existence so I'm wondering what language you rely on specifically that you think says that it overrides them? It's an ER 2168 your honor Judge Collins and it says explicitly that every non-point source must be regulated by permanent waiver or administrative tool. I'd also like to emphasize that the Lahon Regional Board and this is in the record at ER 2146 stated that after the promulgation of the 2004 non-point source rule the MAA was no longer sufficient to comply with existing California law. If the panel has no further questions I see my time is up. All right thank you counsel. Central Sierra Environmental Resource Center versus Kenneth Plus National Forest is submitted.
judges: Fernandez, Wardlaw, Collins